**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Office of Chief Counsel
Dept of VA Affairs
1500 E. Woodrow Wilson Dr
Jackson, MS 39216

9590 9403 0827 5215 4791 35

2. Article Number (Transfer from service label)

7018 0040 0000 8743 6699

PS Form 3811, April 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X [signature] Shelia White
☐ Agent
☐ Addressee

B. Received by (Printed Name): Sonya White
C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

**JACKSON, MS 39216    OFFICIAL USE**

7018 0040 0000 8743 6699

| | | |
|---|---|---|
| Certified Mail Fee | $3.45 | |
| $ | | 0961 |
| Extra Services & Fees (check box, add fee as appropriate) | | |
| ☐ Return Receipt (hardcopy) | $ 2.75 | |
| ☐ Return Receipt (electronic) | $ 0.00 | |
| ☐ Certified Mail Restricted Delivery | $ 0.00 | |
| ☐ Adult Signature Required | $ 0.00 | |
| ☐ Adult Signature Restricted Delivery | $ 0.00 | |
| Postage | | |
| $ | $0.71 | |
| Total Postage and Fees | | |
| $ | $6.91 | |

Postmark Here — MAR -2 2018 — STATION BATON ROUGE LA 70815 — OLD HAMMOND USPS

Sent To
_____
Street and Apt. No., or PO Box No.
_____
City, State, ZIP+4®
_____

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|
| Office of Chief Counsel<br>Department of Veterans Affairs<br>1500 E. Woodrow Wilson Drive<br>Jackson, Mississippi 39216 | Kenneth W. Nasset           Jessica Vasquez, Esq.<br>50390 Highway 1065      400 Poydras Street, Ste. 900<br>Tickfaw, LA 70466        New Orleans, LA 70130 |

| 3. TYPE OF EMPLOYMENT<br>[X] MILITARY  [ ] CIVILIAN | 4. DATE OF BIRTH<br>03/05/1972 | 5. MARITAL STATUS<br>Married | 6. DATE AND DAY OF ACCIDENT<br>12/2016 | 7. TIME (A.M. OR P.M.)<br>4:00 p.m. |
|---|---|---|---|---|

**8. BASIS OF CLAIM** (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

See attached.

**9. PROPERTY DAMAGE**

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

**10. PERSONAL INJURY/WRONGFUL DEATH**

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

See statement attached.

**11. WITNESSES**

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| Andrea Nasset | Same as Claimant |

**12. (See instructions on reverse).      AMOUNT OF CLAIM (in dollars)**

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
|---|---|---|---|
|  | 600,000.00 |  | 600,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| *[signature]* | | |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction
Previous Edition is not Usable
95-109

NSN 7540-00-634-4046

STANDARD FORM 95 (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

| INSURANCE COVERAGE |
|---|
| In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property. |

15. Do you carry accident insurance?  ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.  ☒ No

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible?   ☐ Yes   ☒ No   | 17. If deductible, state amount.

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).

19. Do you carry public liability and property damage insurance?  ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).   ☐ No

Not relevant to the lawsuit

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

Complete all items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filled by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

DAMAGES IN A <u>SUM CERTAIN</u> FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN <u>TWO YEARS</u> AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) **Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.**

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
  A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.
C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

## PAPERWORK REDUCTION ACT NOTICE

This notice is <u>solely</u> for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

STANDARD FORM 95 REV. (2/2007) BACK

On May 13, 2009 Mr. Nasset presented with shortness of breath and an abnormal EKG.

On September 3, 2010, Dr. Carla Luschen, Mr. Nasset's primary care physician was contacted by Dr. Kalavally Siriharan, the cardiac specialist, to advise that the day before, Mr. Nasset had a myocardio ischima and was rated 43% for his left ventricle ejection fraction after an angiogram and stress test.  The myocardio ischima was noted in Mr. Nasset's records and Mr. Nasset was told there was no blockage, that his arteries were clear but that he had high blood pressure.

On September 13, 2016, Dr. Hugh McGrath prescribed a TNF inhibitor after discussing two drugs, Humira and Embrel for treatment of Mr. Nasset's diagnosis of Psoriatic arthritis. Dr. McGrath stated that the Humira could be taken weekly and that any adverse effects could be resolved quicker as it would metabolize through the system faster. Since Mr. Nasset had never been on a TNF inhibitor it would be a safer choice. Dr. McGrath also stated that Embrel would be taken once every two weeks and would take more time to metabolize through the body. Mr. Nasset understood that he would be given Humira and not the Embrel as he had never been on a TNF inhibitor before. Mr. Nasset consented to administration of the Humira.

On October 19, 2016, the medication was mailed to the house, but instead of being Humira, the medication was Embrel. Mr. Nasset called Dr. McGrath's nurse to question the medication change and the Nurse advised that it was the correct medication. Mr. Nasset was never informed of the side effects of Embrel.

On October 20, 2016, after two days of taking the Embrel injections, Mr. Nasset had a spot on his leg appear which was red and warm to the touch. He called in to the R.N. Sandra Godfrey and reported the reaction. She instructed that if he ran a fever, to go to the E.R. and to put an ice pack on the area. Nurse Godfrey did not ask Mr. Nasset to come in for a physical examination nor monitored Mr. Nasset.

November 3, 2016, Mr. Nasset called the R.N. Sandra Godfrey and requested to be taken off the Enbrel and to be put on Humira because the Embrel did not give any relief for periods of time for the stiffness in joints and burning sensation of the feet. Rather than monitor Mr. Nasset carefully and/or using caution with Embrel, Mr. Nasset was told to continue the drug by the Nurse.

On March 6, 2017, Mr. Nasset saw Dr. Marcia Davila and advised her that he was on Embrel and the frequency he was taking the Embrel. Dr. Davila was aware of the cardiac conditions but did not advise Mr. Nasset of any risk or potential risk to the aggravation of this cardiac condition from the use of Embrel.

On June 5, 2017, Mr. Nasset saw Dr. Manuel Vargas and Dr. Nkechinyere Emejuaiwe who disagreed with the diagnosis of psoriatic arthritis but continued with the treatment of Embrel. Mr. Nasset was asked how frequently he was taking it and he advised that he taking it biweekly. Dr. Vargas stated that Mr. Nasset was prescribed the medication for weekly use and that Mr. Nasset should take it as prescribed.

Mr. Nasset started taking the Embrel weekly as prescribed starting on Wednesday, June 6, 2017. On Sunday, Mr. Nasset had an anaphylactic reaction and ended up in the Emergency Room. On June 13, 2017 he was hospitalized for three days and advised that he had congestive heart failure and a myocardial infarction. Dr.

Margaret Maxi and Dr. Meredith Barr advised that the Embrel was the cause of the myocardial infarction. Mr. Nasset was also informed that the anaphylactic reaction could have been from the Embrel as a precursor to the myocardial infarction as both are known side effects of Embrel.

Mr. Nasset is submitting a claim for breach of standard of care for the actions of Dr. Marcia Davila, Dr. Hugh McGrath, Dr. Manuel Vargas and Dr. Nkechinyere Emejuaiwe for prescribing a drug known to cause congestive heart failure when Mr. Nasset's medical records clearly document previous cardiac problems resulting in the worsening of his heart condition.

The Louisiana Supreme Court in *Pfiffner v. Correa,* has set forth the standard for recovery and liability in medical malpractice claims as follows:

"Revised Statute 9:2794 sets forth the burden of proof imposed upon the plaintiff in establishing his malpractice claim. The plaintiff must prove by a preponderance of the evidence:

> (1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, within the involved medical specialty.
>
> (2) That the defendant either lacked this degree of knowledge or skill or failed to use **8 reasonable care and diligence, along with his best judgment in the application of that skill.
>
> (3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred. *See* La.Rev.Stat.Ann. § 9:2794(A) (West 1991).

Thus, the plaintiff must establish the standard of care applicable to the charged physician, a violation by the physician of that standard of care, and a causal connection between the physician's alleged negligence and the plaintiff's injuries resulting therefrom." *Pfiffner v. Correa*, 94-0924 (La. 10/17/94), 643 So. 2d 1228, 1233.

"The jurisprudence has also recognized that there are situations in which expert testimony is not necessary. Expert testimony is not required where the physician does an obviously careless act," *Id.*

"Likewise, where the defendant/physician testifies as to the standard of care and his breach thereof, see, e.g., *Riser v. American Medical Int'l Inc.,* 620 So.2d 372, 377 (La.Ct.App. 5th Cir.1993), or the alleged negligence consists of violating a statute and/or the hospital's bylaws, see, e.g., *Hastings,* 498 So.2d at 72 expert testimony is also unnecessary to establish a malpractice claim." *Pfiffner v. Correa*, 94-0924 (La. 10/17/94), 643 So. 2d 1228, 1234.

"We hold that expert testimony is not always necessary in order for a plaintiff to meet his burden of proof in establishing a medical malpractice claim. Though in most cases, because of the complex medical and factual issues involved, a plaintiff will likely fail to sustain his burden of proving his claim under LSA-R.S. 9:2794's requirements without medical experts, there are instances in which the medical and factual issues are such that a lay jury can perceive negligence in the charged physician's conduct as well as any expert can," *Pfiffner v. Correa*, 94-0924 (La. 10/17/94), 643 So. 2d 1228, 1234.

Additionally, the circuit courts have also provided the standard citing the *Pfiffner* Supreme Court case as follows: the court stated "To successfully establish a claim for medical malpractice, a plaintiff must prove, by a preponderance of the evidence: 1) the

standard of care applicable to the defendant; 2) that the defendant breached that standard of care; and 3) that the resulting injury was a proximate cause of the breach." La. R.S. 9:2794; *Roberts v. Marx*, 47–658 (La.App.2d Cir.01/16/13), 109 So.3d 462, *writ denied*, 13–0649 (La.04/26/13), 112 So.3d 847.*Elledge v. Williamson*, 48,644 (La. App. 2 Cir. 1/15/14), 132 So. 3d 432, 438.

"Plaintiff is generally required to produce expert testimony in a medical malpractice action to establish the applicable standard of care and to determine whether that standard was breached, except where the negligence is so obvious that a lay person can infer negligence without the counsel of expert testimony. *Roberts, supra.* There are instances in which expert testimony is not required in order for the plaintiff to sustain his burden under La. R.S. 9:2794.

The exception exists in cases where the medical and factual issues are such that a lay person can perceive negligence in the physician's conduct as well as any expert. *Pfiffner v. Correa*, 94–0924 (La.10/17/94), 643 So.2d 1228.*Elledge v. Williamson*, 48,644 (La. App. 2 Cir. 1/15/14), 132 So. 3d 432, 438.

### La. Stat. Ann. § 40:1231.1

(13) "Malpractice" means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions during the procurement of blood or blood components, in the training or supervision of health care providers,La. Stat. Ann. § 40:1231.1

(22) "Tort" means any breach of duty or any negligent act or omission proximately causing injury or damage to another. The standard of care required of every health care provider, except a hospital, in rendering professional services or health care to a patient, shall be to exercise that degree of skill ordinarily employed, under similar

circumstances, by the members of his profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his best judgment, in the application of his skill. La. Stat. Ann. § 40:1231.1

## LSA-R.S. 9:2794

### § 2794. Physicians; malpractice; burden of proof; jury charge; physician witness expert qualification

A. In a malpractice action based on the negligence of a physician licensed under R.S. 37:1261 et seq., the plaintiff shall have the burden of proving:

**(1)** The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, within the involved medical specialty.

**(2)** That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.

**(3)** That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred. La. Stat. Ann. § 9:2794

The evidence presented through Mr. Nasset's prior medical history and the documented records of his treatment through 2017 indicate that the VA physicians acted negligently in prescribing Embrel to treat a patient with preexisting cardiac conditions. As a result Mr. Nasset seeks $600,000 for compensatory, pain and suffering, and future medical damages.