UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KENNETH NASSET | CIVIL ACTION |
| VERSUS | NO. 18-9253 |
| UNITED STATES OF AMERICA | SECTION "A" (1) |

## ORDER AND REASONS

Before the Court are two Motions. First, a **Motion *in Limine* (Rec. Doc. 22)** filed by the Defendant the United States of America. Second, a **Motion for Summary Judgment (Rec. Doc. 23)** filed by the Defendant the United States of America. Both of these motions are opposed. Further, these motions were both submitted for consideration on May 13, 2020 and are before the Court on the briefs without oral argument.

**I.      Background**

The Plaintiff Kenneth Nasset filed this matter against the United States Government pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 et seq., regarding the care he received from the U.S. Department of Veterans Affairs ("VA") in New Orleans, Louisiana, for the treatment of his psoriatic arthritis in 2016. (Rec. Doc. 22-1, p. 2, The Government's Motion *in Limine*). Nasset claims that on September 13, 2016 he saw Dr. Hugh McGrath, a rheumatologist, and was prescribed a TNF inhibitor after discussing two drugs, Humira and Enbrel, for treating his psoriatic arthritis. (Rec. Doc. 1, p. 3, Nasset's Complaint). After taking Enbrel for almost a year, Nasset was hospitalized on June 13, 2017 and was informed that he had congestive heart failure and a myocardial infarction. *Id*. at 4. During this hospitalization, Nasset claims that his attending physicians, Dr. Margret Maxi and

Dr. Meredith Barr, advised him that the Enbrel medication was the cause of his myocardial infarction. *Id*.

In preparation for litigation, Nasset produced a written expert report prepared by Dr. Mark Levin. (Rec. Doc. 22-5, Dr. Levin's Expert Report). Dr. Levin's report concluded that, "a TNF inhibitor Enbrel should never have been prescribed by Dr. McGrath to a patient with a known pre-existing heart condition because Enbrel has known side effects that cause heart failure, and its administration is contraindicated." *Id*. at 2. However, the Government seeks to exclude Dr. Levin's report because the Government claims that Dr. Levin lacks the necessary specializations to offer an opinion in this matter. (Rec. Doc. 22, The Government's Motion *in Limine*). Because Nasset has only offered one expert witness, the Government also contemporaneously filed a Motion for Summary Judgment.

The Court will now assess the merits of the Government's Motion *in Limine* and Motion for Summary Judgment.

## II. Legal Standard

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993); *United States v. Hitt*, 473 F.3d 146, 148 (5th Cir. 2006). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

To qualify as an expert, the witness "must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier [of fact] in his search for truth." *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (quotation omitted). "As long as some reasonable indication of qualifications is adduced, the court may admit the evidence without abdicating its gate-keeping function. After that, qualifications become an issue for the trier of fact rather than for the court in its gate-keeping capacity." *Rushing v. Kan. City S. Ry.*, 185 F.3d 496, 507 (5th Cir. 1999), *superseded in part by statute on other grounds as noted in Mathis v. Exxon Corp.*, 302 F.3d 448, 459 n. 16 (5th Cir. 2002).

"The qualification standard for expert testimony is not stringent, and so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility." *Mounce v. Doe*, No. 12-669, 2014 WL 2587698, at *4 (E.D. La. June 10, 2014) (internal citations omitted). "A witness qualified as an expert is not strictly confined to his area or practice, but may testify regarding related applications, rather 'a lack of specialization does not affect the admissibility of the opinion, but only its weight.'" *Cashman Equip. Corp. v. Rozel Operating Co.*, No. 08-363, 2012 WL 2519970, at * (M.D. La. June 28, 2012) (internal citations omitted); *see also Rushing*, 185 F.3d at 507.

"'As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) (quoting *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996)). As the Supreme Court noted in *Daubert*, "'[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and

appropriate means of attacking shaky but admissible evidence.'" *Id*. (quoting *14.38 Acres of Land*, 80 F.3d at 1078) (internal quotations omitted)).

The district court has considerable discretion to admit or exclude expert testimony. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138-39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000). This Court's gatekeeping role when deciding the admissibility of such testimony is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Id*. at 372 (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999)).

### III. Discussion

#### A. *Daubert* Motion

Dr. Mark Levin has been in clinical practice since 1990 in the specialties of Hematology, Oncology, and Internal Medicine. (Rec. Doc. 22-5, p. 1, Dr. Levin's Expert Report). Dr. Levin also states that he is familiar with, and has proscribed on numerous occasions, the drugs Enbrel and Humira. *Id*. Further, "Dr. Levin is certified by the [American Board of Quality Assurance and Utilization Review Physicians "ABQAURP"] which is recognized as a benchmark, demonstrating expertise in the fields of Health Care Quality Management and Patient Safety." (Rec. Doc. 35, p. 3-4, Nasset's Opposition).

However, the Government contends that, "[because] Dr. Levin specializes in oncology and hematology[, he] lacks the qualifications and expertise to testify as to the alleged negligence in the treatment of [the] Plaintiff's psoriatic arthritis and alleged lack of consent obtained by Dr. McGrath, a rheumatologist." (Rec. Doc. 43, p. 2, The Government's Reply). Further, the Government argued that, "Dr. Levin lacks the 'knowledge of accepted standards

of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim' required by La. R.S. 9:2794(D)(1)(b)." *Id*. "Dr. Levin is [also] not a board certified rheumatologist and his CV and report are devoid of any treatment of patients for psoriatic arthritis." *Id*. at 2-3. Thus, "[because] Dr. Levin is not qualified to offer relevant and reliable expert opinions in rheumatology and the standard of care for rheumatologists[, his] report and testimony should be excluded." *Id*. at 3.

The Court agrees with the Government that Dr. Levin is unqualified to give an opinion on the standard of care of a rheumatologist. However, Nasset only seeks to qualify Dr. Levin as an expert to testify as to whether Nasset had informed consent for using Enbrel. (Rec. Doc. 47, p. 5, Nasset's Sur-Reply). As Nasset explained in his sur-reply memorandum, he was "never informed of any potential side effects (material or not) of Enbrel nor was there an in-depth discussion of the drug." *Id*. at 4. As noted above, this matter is a bench trial, so the Court is the trier of fact. Accordingly, "[m]ost of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district court judge sits as the trier of fact in place of a jury." *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000). Thus, the Court finds that Dr. Levin is competent to testify about informed consent, a common area of practice to all clinicians, because of Dr. Levin's: (1) specializations in Hematology, Oncology, and Internal Medicine, (2) his experience with proscribing Enbrel, and (3) his ABQAURP certification. *See Price v. Erbe USA, Inc.*, 42 So. 3d 985, 993 (La. App. 3rd Cir. 2010). Further, as the Fifth Circuit has noted, "a lack of specialization does not affect the admissibility of the opinion, but only its weight." *United States v. Wen Chyu Liu*, 716 F.3d 159, 169 (5th Cir. 2013). As a result, the Court concludes that Dr. Levin's lack of specialization in rheumatology does not preclude him from testifying about the issue of lack of informed consent.

### B. Exhaustion of Administrative Remedies

Next, the Government claims that the issue of lack of informed consent is not properly before the Court because Nasset "failed to present the claim to the V.A. through the administrative process." (Rec. Doc. 44, p. 3, The Government's Memorandum in Support). As the Government explained, "[t]he only mention of any facts regarding any alleged lack of consent to the prescription of an anti-TNF inhibitor by Dr. McGrath is where [the] Plaintiff merely mentions that he was 'never informed of the side effects of Enbrel.'" *Id*. at 4-5.

However, to fulfill the exhaustion of administrative remedies, an FTCA claimant only needs to provide the agency with "facts sufficient to allow his claim to be investigated." *Cook v. United States*, 978 F.2d 164, 166 (5th Cir. 1992). Thus, "[t]his court has not required plaintiffs to specifically enumerate legal theories of recovery in their administrative claims." *Frantz v. United States*, 29 F.3d 222, 224 (5th Cir. 1994). As long as "the Government's investigation of [the] claim should have revealed theories of liability other than those specifically enumerated therein, those theories can properly be considered part of the claim." *Rise v. United States*, 630 F.2d 1068, 1071 (5th Cir. 1980).

Here, the Court finds that Nasset in his SF-95 reiterated numerous times that he was not warned of the side effects of taking Enbrel. (Rec. Doc. 44-1, p. 6-8, Nasset's SF-95). Thus, because Nasset presented sufficient facts to allow his claim to be investigated through the administrative process, the Court has jurisdiction of the issue of lack of informed consent.

### C. Whether Nasset May Amend His Complaint

Although the issue of lack of informed consent is before the Court, the Government correctly points out that Nasset failed to allege this claim in his Complaint. (Rec. Doc. 44, p. 5, The Government's Reply). Pursuant to Federal Rule of Civil Procedure 8, "notice pleading"

requires that the plaintiff give a "'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." However, this defect in Nasset's Complaint can be remedied by an amendment to his Complaint.

The Court can allow a plaintiff to amend his complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). Further, district courts have discretion to grant leave to amend, and the federal rules favor granting leave over denying it. *See Jamieson By & Through Jamieson v. Shaw*, 772 F.2d 1205, 1208 (5th Cir. 1985). Justifications for denying leave to amend include "undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by prior amendment, undue prejudice to the opposing party, and the futility of the amendment." *Id*. Allowing a plaintiff to amend a complaint is "futile" when "the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co.*, LLC, 234 F.3d 863, 873 (5th Cir. 2000).

Here, there is no indication that allowing Nasset to amend his Complaint will be futile. Further, the Court finds that Nasset presents a plausible claim that he lacked informed consent. Additionally, given the early stage of this litigation and the circumstances surrounding the COVID-19 outbreak, granting leave to amend in this case will not result in any undue prejudice to the Government. Therefore, the Court will provide Nasset with the opportunity to amend his Complaint.

**D. The Government's Motion for Summary Judgment**

Lastly, because there is a question of fact as to whether Nasset gave his informed consent to take Enbrel and because the Court found Dr. Levin to be competent to testify on this issue, the Court denies the Government's Motion for Summary Judgment.

Accordingly;

**IT IS ORDERED** that the **Motion *in Limine* (Rec. Doc. 22)** filed by the Defendant the United States of America is **DENIED**.

**IT IS FURTHER ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 23)** filed by the Defendant the United States of America is **DENIED**.

**IT IS FURTHER ORDERED** that the Plaintiff Kenneth Nasset will have until **June 17, 2020** to amend his Complaint to include a lack of informed consent claim.

New Orleans, Louisiana, this 4th day of June, 2020

_____
JUDGE JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE