UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **KENNETH NASSET** | \* | **CASE NO. 18-9253** |
| **vs.** | \* | **SECT. A(1)** |
| **UNITED STATES OF AMERICA** | \* | **JUDGE ZAINEY** |
| | \* | **MAG. VAN MEERVELD** |

## THE USA'S MEMORANDUM IN OPPOSITION
## TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This Memorandum in opposition is filed on behalf of the United States of America ("USA") to confirm that Plaintiff is not entitled to judgment on Plaintiff's medical malpractice and informed consent claims because: (1) Plaintiff's only expert Dr. Levin does not have the degree of knowledge or skill that must be possessed by a health care provider in the field in question, as required by La. R.S. 9:2794A; (2) this is not a case where the obvious negligence exception would apply and therefore expert testimony is required; and (3) Plaintiff was advised of all the risks of the medication Enbrel, including the risk of congestive heart failure.

### I.      Burden of Proof

**A. Plaintiff's motion for summary judgment**

Federal Rule of Civil Procedure 56(a) provides "the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The party seeking summary judgment bears the initial burden of informing the court of the basis for their motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which they believe demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986);

1

*Colson v. Grohman*, 174 F.3d 498, 506 (5th Cir. 1999); *Marshall v. East Carroll Parish Hosp. Serv. Dist.*, 134 F.3d 319, 321 (5th Cir. 1998).  The moving parties, however, need not negate the elements of the nonmovant's case. *See Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996).

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *Celotex*, 477 U.S. at 322-23; *Anderson*, 477 U.S. at 257; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *Colson*, 174 F.3d at 506;  *Marshall*, 134 F.3d at 321-22.  All the evidence must be construed "in the light most favorable to the non-moving party without weighing the evidence, assessing its probative value, or resolving any factual disputes."  *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir.1996) (*citing Lindsey v. Prive Corp.*, 987 F.2d 324, 327 n. 14 (5th Cir. 1993)); *Messer v. Meno*, 130 F.3d 130, 134 (5th Cir.1997).

**II.     Argument**

   **A. Plaintiff's medical malpractice claims, Counts I and II, should be dismissed because Plaintiff failed to meet his burden of proof.**

The Plaintiff's motion for summary judgment should be denied for the following reasons: (1) under Louisiana law, the VA's internal policy cannot establish the applicable standard of care; (2) Dr. McGrath did not testify as to the standard of care nor did he admit to breaching the standard of care; (3) Plaintiff failed to meet his burden of proof as to the standard of care element because Plaintiff's Rules 26 designation of experts did not disclose that a treating physician would testify as to the standard of care; (4) this Court has already ruled that Dr. Levin is unqualified to opine on the standard of care; and (5) Plaintiff cannot meet his burden of proof on his medical malpractice claims without expert testimony.

The USA already briefed these issues in its previously-filed memorandum in support of the USA's motion for reconsideration, R. Doc. 59-1. Therefore, the USA adopts and incorporates that memorandum in support as if copied *in extensio*. For the reasons discussed in that memorandum, Plaintiff cannot satisfy his burden of proof regarding his medical malpractice claims and this Court should deny his motion for summary judgment.

**B. Plaintiff's informed consent claim, Count III, should be dismissed because Plaintiff was advised of all material risks, and Plaintiff failed to establish that any alleged failure to advise caused his injuries.**

Plaintiff has failed to satisfy his burden of proof as to all four elements of his informed consent claim. Therefore this Court should deny Plaintiff's motion for summary judgment on his informed consent claim. Under Louisiana law, the plaintiff must prove: (1) the existence of a ***material risk*** unknown to the patient; (2) a failure to disclose that risk on the part of the physician; (3) that disclosure of the risk would have led a reasonable patient in plaintiff's position to reject the medical procedure or choose a different course of treatment; and (4) injury.

**1. The risk of congestive heart failure is not a *material* risk.**

In Louisiana, a physician is not charged with the duty of informing a patient of any and all known risks however slight or immaterial, but rather, a physician has the duty to disclose all material risks of the proposed treatment. *Deroche v. Tanenbaum*, 131 So.3d 400 (La. App. 4 Cir. 12/18/13). "The determination of materiality is a two-step process. The first step is to define the existence and nature of the risk and the likelihood of its occurrence. "Some" expert testimony is necessary to establish this aspect of materiality because only a physician or other qualified expert is capable of judging what risk exists and the likelihood of occurrence." *Id.* (emphasis supplied). "A risk is material when a reasonable person in what the doctor knows or should know to be the

patient's position, would be likely to attach a significance to the risk in deciding whether or not to forego the proposed therapy." *Id.* at 404, 411-413.

Plaintiff has failed to establish that less than 0.1% chance of having congestive heart failure was a ***material*** risk. Plaintiff has failed to produce any expert testimony establishing that the risk of congestive heart failure is a material risk. To the contrary, the risk of CHF is not a boxed warning, which is the strongest form of warning required by the FDA for prescription drug labeling. *See* Enbrel insert, attached hereto as Exhibit 9. Further, the declaration of Dr. Wilson establishes that the risk of congestive heart failure is not a material risk. *See* the declaration of Dr. Wilson, attached hereto as Exhibit 10.[1] Dr. Wilson concludes, "the boxed warning for a TNF inhibitor include the risk of infections and malignancies." *Id.* at ¶5. Further, "Dr. McGrath did not breach the standard of care of a rheumatologist by failing to inform Mr. Nasset of the risk of Enbrel potentially worsening congestive heart failure and of the rare new-onset cases of congestive heart failure because this risk is less than 0.1%. This low risk is not a boxed warning of Enbrel." *Id.* at ¶6. Accordingly, the risk of congestive heart failure is not a material risk, Plaintiff cannot satisfy his burden of proof as to this element of his informed consent claim, and Plaintiff's motion for summary judgment should be denied.

### 2. Plaintiff was advised of the risks of Enbrel, including the risk of congestive heart failure.

Plaintiff was advised of all material risks of Enbrel by three separate rheumatologists, Dr. McGrath, Dr. Vargas, and Dr. Emejuaiwe. *See.* Ex. 3 and Ex. 8 and 8A, the declaration of Dr. Emejuaiwe.

---

[1] It should be noted that the USA had to supplement Dr. Wilson's testimony because at the time of Dr. Wilson's February 27, 2020 report, the Plaintiff had not plead an informed consent claim. Plaintiff was given leave to amend his Complaint, and did not plead the informed consent until June 16, 2020. R. Doc. 50.

Further, Plaintiff was also advised of the risk of congestive heart failure by Dr. Emejuaiwe. *See* Ex. 8.  Dr. Emejuaiwe went above and beyond what she was required to do by informing Plaintiff of the small risk of congestive heart failure.  *Id.* 16.  At that June 5, 2017 visit, Dr. Emejuaiwe went over the risks of immunosuppressive therapy, including the risk of infection and the low risk of developing new congestive heart failure or exacerbation of existing heart failure.  *Id.*  Afterwards, Plaintiff acknowledged his understanding of the risks associated with Enbrel. *Id.* Dr. Emejuaiwe suggested to Plaintiff that he discontinue Enbrel because he reported to be in pain. *Id.*  Plaintiff responded that he did not want to be taken off of Enbrel.  He reported he wanted to continue taking Enbrel because the benefits he derived from Enbrel were quite significant including less pain and more energy.  *Id.*  For Plaintiff to suggest he should never have been prescribed Enbrel contradicts his own insistence to stay on the medication on June 5, 2017.

Plaintiff was advised of all material risks by three rheumatologists.  Although the risk of congestive heart failure was not a material risk, he was still advised of this risk by Dr. Emejuaiwe. Thus, Plaintiff is not entitled to summary judgment on the informed consent claim.

### 3. The disclosure of the risk of congestive heart failure would not have led a reasonable patient to reject the treatment because the risk was so small.

Nothing in Plaintiff's one-paragraph argument is sufficient to meet his burden of proof that a reasonable patient would have rejected the TNF inhibitor if he had been informed of the low risk of congestive heart failure.  Indeed, a reasonable patient would not reject taking a TNF inhibitor because of the low risk of congestive heart failure.  As Dr. Wilson notes, "[i]n my experience, patients with psoriatic arthritis take Enbrel despite the low risk of congestive heart failure because that risk is so small and the benefits of taking Enbrel for the patient's psoriatic arthritis are great." Ex. 10 at ¶7. Therefore, Plaintiff has not met his burden of proof on this element and this Court should deny his motion for summary judgment.

### 4. Plaintiff failed to prove that the alleged failure to advise of the risk caused his myocardial infarction and congestive heart failure.

There are two aspects to proving causation as a result of a lack of informed consent:

First, the plaintiff must prove the defendant's breach of duty was a cause in fact of the claimed damages or that the defendant's proper performance of the duty would have prevented the damages. Second, the plaintiff must prove that a reasonable patient in the plaintiff's position would not have consented to the [treatment] if the material information and risks had been disclosed. An appellate court, in reviewing a jury's determination that a doctor failed to obtain the patient's informed consent, should focus on the duty of the doctor to provide material information to the patient under the circumstances of the particular case.

*Tipton v. Campbell*, 996 So.2d 27, 37 (La. App. 4 Cir. 9/24/08)(internal citations omitted). Here, Plaintiff failed to establish both elements of the informed consent elements of causation because there was no breach of duty, and even if there was that was not the cause of Plaintiff's injuries.

### a. Dr. Levin is not qualified to opine on causation.

For the reasons discussed in the USA's motion for reconsideration, R. Doc. 59-1, Dr. Levin is not qualified to offer causation testimony in this case. Plaintiff needs expert testimony from a cardiologist or rheumatologist to establish that his myocardial infarction and congestive heart failure was caused by Enbrel, which he failed to produce. In *Jordan v. Cmty. Care Hosp.*, 2019-0039 (La. App. 4 Cir. 7/24/19), 276 So. 3d 564, 579 the Louisiana Fourth Circuit held that the obvious-negligence exception was inapplicable here, where the uses and contraindications of the drug taken by plaintiff are not within the average lay person's knowledge, and the appropriateness of the administration of this drug to this particular patient would also not be common knowledge. "Likewise, the element of causation as to the physician defendants would not be common knowledge." *Id.* Thus, expert testimony was required. The court held, "'[m]ere speculation will not defeat a motion for summary judgment, and conclusory allegations, improbable inferences, and unsupported speculation are insufficient to support a finding that a genuine issue of material

fact exists.'" *Id.* (quoting *Kinch v. Our Lady of Lourdes Reg'l Med. Ctr.*, 181 So.3d 900, 905 (La. App. 3 Cir. 12/9/15)).

Similarly, in this case, the uses and contraindications of Enbrel are not within the average lay person's knowledge, and the appropriateness of the administration of Enbrel to Plaintiff is not common knowledge. Thus, expert testimony is required. Plaintiff's expert, Dr. Levin, is not qualified to opine on whether Enbrel caused the Plaintiff's injuries, as he does not have the degree of knowledge or skill that must be possessed by a health care provider in the field in question, as required by La. R.S. 9:2794A. Even if Dr. Levin was qualified, his report does not establish causation. And even if Dr. Levin was qualified and the opinion expressed in his report did establish causation, both of which the USA disputes, the issue is contested. Accordingly, Plaintiff cannot satisfy his burden of proof and summary judgment should be denied.

### b. Dr. Levin did not opine on causation and his opinion is refuted by the USA's experts.

On page 5 and 9 of Plaintiff's memorandum, Plaintiff alleges, "Dr. Levin opines that the injection of Enbrel caused the heart failure and that the injuries and negligence are connected within a medical degree of certainty" and cites to Dr. Levin's report.[2] Nothing could be farther from the truth, as Dr. Levin did not opine that Enbrel caused Plaintiff's injuries. The USA encourages the Court to delve into the record in this case, as Plaintiff has continuously misstated deposition testimony as well as expert testimony. Dr. Levin merely opined, "I conclude with reasonable degree of medical certainty that a TNF inhibitor Enbrel should never have been prescribed by Dr. McGrath to a patient with a known pre-existing heart condition *sic* e because Enbrel has known side effects that cause heart failure, and its administration is contraindicated." *See* Ex. 5. This is insufficient under FRCP 26(a)(2)(B) and Fed. R. Evid. 702.

---

[2] There is no citation to what page or paragraph of the report.

"Under Rule 26(a), expert reports must explain the 'how' and 'why' of the expert's opinions with specificity." *Fulmer v. United States*, 2019 WL 1989233, at *3 (E.D. La. May 6, 2019) (Ashe, J.) (*citing Sylla-Sawdon*, 47 F.3d at 284). "Expert reports must not be sketchy, vague or preliminary in nature." *Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 n.6 (7th Cir. 1998) (citing Fed. R. Civ. P. 26 Advisory Committee Notes). Dr. Levin's report completely fails to explain the "how" or "why" for any of his opinions. Rather, he simply "concludes with a medical degree of certainty." Dr. Levin provides no medical literature or other applicable standards to demonstrate that Dr. McGrath's prescription of a TNF inhibitor to Plaintiff caused him heart failure. Thus, Dr. Levin's proposed testimony is mere *ipse dixit*, and this unreliable evidence should be excluded under Rule 702. *See Konrick v. Exxon Mobil Corp.*, 2016 WL 439361, at *11 (E.D. La. Feb. 4, 2016) (Vance, J.) (noting that "[w]ithout some explanation of what these methodologies are or how she applied them to the scientific literature, Dr. Bearer's opinion is conclusory *ipse dixit*," and granting motion to exclude expert), *aff'd*, 670 F. App'x 222 (5th Cir. 2016); *Burst*, 104 F. Supp. 3d at 790 (excluding unreliable expert witness testimony and report).

Dr. Levin has been disqualified for his conclusory reports in the past. *See Canuto v. Sec'y of Health & Human Servs.*, 660 F. App'x 955, 959 (Fed. Cir. 2016) (holding "Dr. Levin's opinion that the plaintiffs' son's autism was caused by a vaccine was 'wholly unpersuasive regarding every element necessary to proving causation-in-fact'") and *Baylor Coll. of Med. v. Davies*, 599 S.W.3d 323, 330 (Tex. App. 2020) (holding Dr. Levin's causation opinion is conclusory, and as a matter of law, a conclusory expert opinion does not afford a reasonable basis to conclude that a claim has merit).

Even if this Court were to find that Dr. Levin's report satisfies the requirements of FRCP 26(a)(2)(B) and Fed. R. Evid. 702 as to causation, the USA has produced two expert reports that contradict the Plaintiff's allegation, and therefore summary judgment must be denied. The USA's expert, Dr. Wilson noted, "[i]f patients with rheumatoid arthritis have a higher risk for congestive heart failure because they have rheumatoid arthritis, then it is not possible to say that the anti-TNF therapy can cause congestive heart failure." *See* Ex. 6 at ¶15. "Because the studies of the effect of anti-TNF biological agents on congestive heart failure were inconclusive, it is not possible to say if Enbrel was a factor in his congestive heart failure." Ex. 6 at ¶15. The USA's expert, Dr. Kushner, also disagrees with Dr. Levin. Dr. Kushner noted, "[i]n reviewing the literature surrounding the use of TNF alpha antagonists, I cite the scholarly review posted in UpToDate.com and referenced below. That summary and its references state clearly that a definitive link between these agents and congestive heart failure has not been made." Ex. 7 at ¶9.

### c. Plaintiff's own testimony refutes his allegations that his lack of consent to Enbrel caused his injuries.

Plaintiff's allegation that his lack of consent to Enbrel caused his myocardial infarction and congestive heart failure is refuted by his own testimony and his sworn statements to the VA where Plaintiff declares that his congestive heart failure is service related. Plaintiff's own testimony raises a genuine issue of material fact as to causation. Indeed, Plaintiff filed three separate statements in support of his claim with the VA alleging that his congestive heart failure was service related. *See* the July 18, 2017 statement signed by Plaintiff, attached hereto as Exhibit 11; the April 18, 2018 statement signed by Plaintiff, attached hereto as Exhibit 12; and the January 29, 2019 statement signed by Plaintiff and Plaintiff's counsel, attached hereto as Exhibit 13. Each of these three statements had a penalty provision noting that "the law provides severe penalties which

include fine or imprisonment, or both, for the willful submission of any statement or evidence of a material fact, knowing it to be false."

Further, at plaintiff's deposition, Plaintiff admitted that in his sworn statements he was seeking to have his congestive heart failure from June of 2017 deemed service related.

Q: And in this statement you seek to have your congestive heart failure from June of 2017 deemed service related; is that correct?

A: Yes.

Q: So is your congestive heart failure from June of 2017 service related or caused by a lack of informed consent?

A: It's caused by a lack of informed consent.

*See* Ex. 2 at 93:11-15 .

Q: Okay. So you have made three statements to the VA to support your claim that your congestive heart failure in June of 2017 is service related; correct?

A: I don't know the exact number. But yes, I made multiple.

*See* Ex. 2 at 108:7-12. Accordingly, Plaintiff's motion for summary judgment must be denied because Plaintiff failed to establish that his injuries were caused by a lack of informed consent for taking Enbrel.

**III.   Conclusion**

Plaintiff's summary judgment on his medical malpractice claims and informed consent claim should be denied because Plaintiff failed to produce expert testimony in accordance with La. R.S. 9:2794A, this is not a case where the obvious negligence exception would apply, and Plaintiff was advised of all material risks of taking Enbrel.

Respectfully submitted,

PETER G. STRASSER
UNITED STATES ATTORNEY
*/s/ Mary Katherine Kaufman*
MARY KATHERINE KAUFMAN
Assistant United States Attorney
LA Bar #32719
650 Poydras Street, Suite 1600
New Orleans, Louisiana 70130
Telephone: (504) 680-3008
Facsimile: (504) 680-3184
Mary.Katherine.Kaufman@usdoj.gov