UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **KENNETH NASSET** | * | **CASE NO. 18-9253** |
| vs. | * | **SECT. A(1)** |
| **UNITED STATES OF AMERICA** | * | **JUDGE ZAINEY** |
| | * | **MAG. VAN MEERVELD** |

## MEMORANDUM IN SUPPORT OF THE USA'S CROSS MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT**:

The United States of America (USA) moves the Court for summary judgment on Plaintiff's informed consent claim (Count III of Plaintiff's Complaint). While the USA previously filed a motion for summary judgment and a motion for reconsideration on the Plaintiff's negligence claims, R. Docs. 55 and 59, the USA is now seeking summary judgment on the Plaintiff's informed consent claim as well. Summary judgment should be granted as to Plaintiff's informed consent claim because Plaintiff was advised of the risk of congestive heart failure by Dr. Emejuaiwe. Ex. 8. Further, Plaintiff failed to produce expert testimony establishing that congestive heart failure was a *material* risk or that the lack of informed consent *caused* his myocardial infarction and congestive heart failure, as required by La. R.S. 9:2794A. Accordingly, the USA is entitled to judgment as a matter of law.

**I. Facts**

On October 4, 2018 Plaintiff filed suit against the USA pursuant to the Federal Torts Claims Act (FTCA) "regarding the care he received from the U.S. Department of Veterans Affairs (VA) in New Orleans, Louisiana, for the treatment of his psoriatic arthritis in 2016." R. Doc. 49 at 1. Plaintiff has a long medical history and was treating at the VA for the following conditions:

1

severe depression, chronic fatigue syndrome, intervertebral disc syndrome, chronic fatigue syndrome, and arthritis. R. Doc. 36-1.

On September 13, 2016, Plaintiff saw Dr. Hugh McGrath, a rheumatologist, at the VA in New Orleans and was prescribed a TNF inhibitor after discussing medications for treatment of his psoriatic arthritis. R. Docs. 36-1 and 50 at ¶12. Plaintiff testified that he did not have congestive heart failure prior to June of 2017. Ex. 2 at 39:16-21. Plaintiff testified that on September 13, 2016, he did not inform Dr. McGrath of his abnormal EKG, prior pain in his chest, or the incident at physical therapy where he was sent to clinic to see if he was having a heart attack. Ex. 2 at 70:9-23. Plaintiff testified that Dr. McGrath told him to return to the clinic in three months. Ex. 2 at 72:3-25.

Plaintiff received the drug Enbrel in the mail and began taking it. R. Docs. 36-1 and 50 at ¶14. Plaintiff testified that he failed to read the Enbrel box or the packet insert prior to taking the medication. Ex. 2 at 74:20-22 and 23-25. The boxed warnings for Enbrel include the risk of infections and malignancies. Ex. 9 and Ex. 10.

It is not customary for a rheumatologist to advise a patient of all the risks of taking a TNF inhibitor. Ex. 10. Rather, it is customary for a rheumatologist to advise a patient on the boxed warnings, which is the strongest form of warning required by the FDA for prescription drug labeling. The boxed warnings for a TNF inhibitor include the risk of infections and malignancies. *Id.* The risk of congestive heart failure is not a boxed warning of Enbrel. Ex. 9 and 10. Plaintiff was advised of the boxed warnings of Enbrel by Dr. McGrath. Ex. 2 at 67:1-12 and 97:11-25 and Ex. 3.

Plaintiff called the nurse in October of 2016 regarding a red spot on his leg. Plaintiff did not describe any cardiac symptoms. R. Docs. 36-1 and 50 at ¶15. Plaintiff called the nurse again

on November 3, 2016.  Again, Plaintiff did not describe any cardiac symptoms.  R. Docs. 36-1 and 50 at ¶16.  On March 6, 2017, Plaintiff saw his primary care physician, Dr. Marcia Davila.  For the third time in five months, Plaintiff did not describe any cardiac symptoms. R. Docs. 36-1 and 50 at ¶17.

On June 5, 2017, Plaintiff was seen by two VA rheumatologists.  The dose of Enbrel was changed to once weekly.  Once again, Plaintiff did not describe any cardiac symptoms. R. Docs. 36-1 and 50 at ¶18.  During this appointment, Dr. Vargas and Dr. Emejuaiwe advised Plaintiff of the boxed warnings for Enbrel.  Ex. 2 at 81:1-9 and Ex. 8 and 8A.  Dr. Emejuaiwe also advised Plaintiff of the risk of congestive heart failure.  Ex. 8.

On June 13, 2017, Plaintiff was hospitalized for congestive heart failure and a myocardial infarction. R. Docs. 36-1 and 50 at ¶19.  Plaintiff's use of Enbrel was stopped on June 13, 2017.  R. Doc. 36-1.

Plaintiff produced one written expert report, that of Dr. Levin, a physician practicing in New Jersey and board certified in internal medicine, oncology, and hematology.  *See* R. Doc. 36-1, Exhibit 1, Written Report of Dr. Levin, and Exhibit 2, Curriculum Vitae of Dr. Levin.  *See also* Ex. 5.  This Court held that Dr. Levin is not qualified to opine on the standard of care of a rheumatologist.  R. Doc. 49.

The United States produced the report of Dr. Merlin Wilson, a recently retired physician who practiced in New Orleans and is board certified in rheumatology.  *See* R. Doc. 36-1 and Exhibit 3, Written Report of Dr. Wilson and Exhibit 4, Curriculum Vitae of Dr. Wilson.  *See also* Ex. 6.  The United States also produced the written report of Dr. Fred Kushner, practicing in Louisiana and board certified in interventional cardiology and nuclear cardiology.  *See* R. Doc.

3

36-1 and Exhibit 5, Report of Dr. Kushner and Exhibit 6, Curriculum Vitae of Dr. Kushner. *See also* Ex. 7.

Separate from this lawsuit, Plaintiff filed three separate statements in support of his claim with the VA alleging that his congestive heart failure was service related.[1] Ex. 11, 12, and 13. Each of the three statements made by Plaintiff to the VA had a penalty provision noting that "the law provides severe penalties which include fine or imprisonment, or both, for the willful submission of any statement or evidence of a material fact, knowing it to be false." Ex. 11, 12, and 13.

## II. Law and Argument

### A. The standard of review

#### 1. Rule 56 standard

In non-jury cases, the Fifth Circuit has recognized "that it makes little sense to forbid the [trial] judge from drawing inferences from the evidence submitted on summary judgment when that same judge will act as the trier of fact, unless those inferences involve issues of witness credibility or disputed material facts." *Lyles v. MedTronic Sofamor Danek, USA, Inc.*, 871 F.3d 305, 311 (5th Cir. 9/11/2017) (quoting *In re Placid Oil Co.*, 932 F.2d 394, 398 (5th Cir. 1991) [citation omitted]). Thus, "at the summary judgment stage a judge in a bench trial has the limited discretion to decide that the same evidence, presented to him or her as trier of fact in a plenary trial, could not possibly lead to a different result." *Id.* This "more lenient standard" applies to this motion for summary judgment,[2] as jury trials are not permitted against the United States under the FTCA. 28 U.S.C. § 2402.

---

[1] Plaintiff has filed three statements in support of his claim that his June 2017 congestive heart failure is service related. This claim, separate from this lawsuit, is still pending with the VA.
[2] *See Phillips Oil Co v. OKC Corp.*, 812 F.2d 265, 273 n.15 (5th Cir. 1987) (the Fifth Circuit has "arguably articulated an even more lenient standard for summary judgment in certain nonjury cases."); *Charles v. U.S.P.S.*, 2007 WL

4

"If the [nonmoving party's] theory is ... senseless, no reasonable jury could find in its favor, and summary judgment should be granted." *Eastman Kodak Co. v. Image Tech. Servs.*, 504 U.S. 451, 468-69 (1992). The nonmovant's burden is not satisfied by "some metaphysical doubt as to material facts," conclusory allegations, unsubstantiated assertions, speculation, the mere existence of some alleged factual dispute, or "only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof at trial. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993). "In such a situation, there can be 'no genuine issue as to any material fact' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23.

2. **Cross-motion standard**

In *United States v. Bros. Enterprises, Inc.*, the Eastern District of Texas noted the standard for cross-motions for summary judgment in the 5th Circuit, holding:

> On cross-motions for summary judgment, the court examines each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party. *White Buffalo Ventures, LLC v. Univ. of Tex. at Austin*, 420 F.3d 366, 370 (5th Cir.2005); *accord CareFlite v. Office & Prof'l Emps. Int'l Union, AFL–CIO*, 612 F.3d 314, 318 (5th Cir.2010); *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir.2001). Cross-motions for summary judgment will not, in and of themselves, warrant the granting of summary judgment unless one of the parties is entitled to judgment as a matter of law. *Joplin v. Bias*, 631 F.2d 1235, 1237 (5th Cir.1980); *Bricklayers, Masons & Plasterers Int'l Union of Am. v. Stuart Plastering Co.*, 512 F.2d 1017, 1023 (5th Cir.1975). The rationale for this rule is that each party may move for summary judgment using different legal theories that rely upon different sets of material facts. *Bricklayers, Masons & Plasterers Int'l Union of Am.*, 512 F.2d at 1023. Nonetheless, cross-motions for summary judgment may be probative of the absence of a factual dispute when they

---

925899 at *2 (E.D. La. 3/13/07) (Africk, J.) ("In a nonjury case, the Fifth Circuit has suggested, but not explicitly adopted, a 'more lenient standard for summary judgment.'") (citations omitted); *see also Miciotto v. Brown*, 2005 WL 1431703 at *5 (E.D. La. 5/25/05) (Zainey, J.); *U.S. v. Luwisch*, 1998 WL 830647 (E.D. La. 11/30/98) (Vance, J.).

    reveal a basic agreement concerning what legal theories and material facts are dispositive.

113 F. Supp. 3d 907, 912 (E.D. Tex. 2015).

### B. Plaintiff's medical malpractice claims in Counts I and II should be dismissed as a matter of law.

The USA's motion for summary judgment should be granted on Plaintiff's medical malpractice claims for the following reasons: (1) under Louisiana law, the VA's internal policy cannot establish the applicable standard of care; (2) Dr. McGrath did not testify as to the standard of care nor did he admit to breaching the standard of care; (3) Plaintiff failed to meet his burden of proof as to the standard of care element because Plaintiff's Rules 26 designation of experts did not disclose that a treating physician would testify as to the standard of care; (4) this Court has already ruled that Dr. Levin is unqualified to opine on the standard of care; and (5) Plaintiff cannot meet his burden of proof on his medical malpractice claims without expert testimony.

The USA adopts and incorporates as if copied *in extensio* the memorandum in support of the USA's motion for reconsideration, R. Doc. 59-1 as well as the USA's memorandum in opposition to the Plaintiff's motion for summary judgment, R. Doc. 61.

### C. Plaintiff's informed consent in Count III should be dismissed.

Plaintiff has failed to satisfy his burden of proof as to all four elements of his informed consent claim and therefore such claim must be dismissed. Under Louisiana law, the plaintiff must prove: (1) the existence of a material risk unknown to the patient; (2) a failure to disclose that risk on the part of the physician; (3) that disclosure of the risk would have led a reasonable patient in plaintiff's position to reject the medical procedure or choose a different course of treatment; and (4) injury. *See Hondroulis v. Schuhmacher*, 553 So.2d 398, 418–19 (La.1988).

The USA adopts and incorporates as if copied *in extensio* its memorandum in opposition to the Plaintiff's motion for summary judgment, R. Doc. 61.

The USA has established that it is entitled to summary judgment on Plaintiff's informed consent claim. Plaintiff failed to carry his burden of proof as to any of the four elements of his claim, let alone all four elements as is required.

### 1. Plaintiff failed to establish he was not informed of a material risk.

The USA produced two declarations, that of Dr. Wilson and Dr. Dr. Emejuaiwe, establishing that Plaintiff was informed of all material risks of Enbrel. *See* Ex. 8 and 8A and Ex. 10. Further, although the risk of congestive heart failure was not a material risk, Dr. Emejuaiwe went above and beyond what was required of a rheumatologist and informed Mr. Nasset on June 5, 2017 the low risk of developing new congestive heart failure or exacerbation of existing heart failure. Ex. 8 and 8A.

### 2. Plaintiff failed to establish that a VA doctor failed to disclose said material risk.

Plaintiff was advised of the boxed warnings of Enbrel by three different rheumatologists. Plaintiff was advised of the boxed warnings of Enbrel by Dr. McGrath. Ex. 2 at 67:1-12 and 97:11-25 and Ex. 3. Plaintiff was advised of the boxed warnings of Enbrel by Dr. Vargas, and Dr. Emejuaiwe. Ex. 2 at 81:1-9 and Ex. 8 and 8A. Plaintiff was advised of the risk of congestive heart failure by Dr. Emejuaiwe. Ex. 8.

### 3. Plaintiff failed to establish that disclosure of the risk would have led a reasonable patient in plaintiff's position to reject the treatment.

Plaintiff failed to establish that disclosure of the risk would have led a reasonable patient in Plaintiff's position to reject the medical procedure or choose a different course of treatment, as Dr. Wilson stated that in his experience, patients with psoriatic arthritis take Enbrel despite the

low risk of congestive heart failure because that risk is so small and the benefits of taking Enbrel for the patient's psoriatic arthritis are great. Ex. 10. Further, after being advised by Dr. Emejuaiwe that Enbrel can cause exacerbation of existing heart failure and the low risk of developing new congestive heart failure or lung disease, Mr. Nasset acknowledged his understanding of the risks associated with Enbrel. *See* Ex. 8 at ¶16-17. Further, Mr. Nasset responded that he did not want to be taken off Enbrel. He reported that he had tolerated the medication and wanted to continue taking Enbrel because the benefits he derived from Enbrel were quite significant including less pain and more energy. *Id.* at ¶13.

### 4. Plaintiff failed to establish that the failure to disclose the risk *caused* his injury.

Even if this Court were to find that a genuine issue of material fact exists as to whether congestive heart failure was a material risk or whether Plaintiff was informed of that risk, which the USA disputes, Plaintiff has failed to carry his burden of proof as to causation. In Plaintiff's motion for summary judgment, Plaintiff cites to his own testimony to establish the causation element. *See* R. Doc. 57-2 at p. 4, n. 25. Plaintiff lacks the required expert testimony to meet his burden of proof as to causation. *See Serou v. Touro Infirmary*, 105 So. 3d 1068, 1091 (La. App. 4th Cir. 2013) ("Expert medical testimony is required when the conclusion regarding medical causation is one that is not within common knowledge."); *Thomas v. United States*, 2005 WL 757268, at *8 (E.D. La. Mar. 31, 2005) (Africk, J.) ("[C]ourts have continued to require expert testimony in medical malpractice cases when the medical and factual issues are complex and are outside the province of a lay juror's common knowledge."), aff'd, 176 F. App'x 474 (5th Cir. 2006); *Blazevich v. Walker*, 2003 WL 21135715, at *3 & n.5 (E.D. La. May 14, 2003) (Zainey, J.) (same).

Plaintiff may attempt to allege that Dr. Levin opined on causation.  However, Dr. Levin is not qualified to opine on causation, and even if he was, his report is insufficient under FRCP 26(a)(2)(B) and Fed. R. Evid. 702 because he simply concluded that the injuries and negligence are connected "within a medical degree of certainty."  Dr. Levin has been disqualified for these types of conclusory opinions in the past.  *See* R. Doc. 59-1 at 13-14.

The USA has produced two expert reports that establish that the lack of informed consent did not cause the Plaintiff's injuries, and therefore summary judgment is warranted.  The USA's expert, Dr. Wilson noted, "[i]f patients with rheumatoid arthritis have a higher risk for congestive heart failure because they have rheumatoid arthritis, then it is not possible to say that the anti-TNF therapy can cause congestive heart failure." *See* Ex. 6 at ¶15.  "Because the studies of the effect of anti-TNF biological agents on congestive heart failure were inconclusive, it is not possible to say if Enbrel was a factor in his congestive heart failure." Ex. 6 at ¶15.  The USA's expert, Dr. Kushner noted, "[i]n reviewing the literature surrounding the use of TNF alpha antagonists, I cite the scholarly review posted in UpToDate.com and referenced below.  That summary and its references state clearly that a definitive link between these agents and congestive heart failure has not been made." Ex. 7 at ¶9.

Finally, the Plaintiff himself has alleged that his congestive heart failure was service related, and therefore not caused by the lack of informed consent. Ex. 11, 12, and 13.  Accordingly, Plaintiff failed to meet his burden of proof as to the causation element.

### III. Conclusion

Accordingly, in light of Plaintiff's burden of proof, the insufficiency of Plaintiff's expert evidence to meet his burden, and the summary judgment evidence submitted by the USA

establishing that the Plaintiff was informed of the risks as well as the fact that the lack of consent did not cause the Plaintiff's injuries, summary judgment in favor of the United States is warranted.

                                      Respectfully submitted,

                                      PETER G. STRASSER
                                      UNITED STATES ATTORNEY
                                      */s/ Mary Katherine Kaufman*
                                      MARY KATHERINE KAUFMAN
                                      Assistant United States Attorney
                                      LA Bar #32719
                                      650 Poydras Street, Suite 1600
                                      New Orleans, Louisiana 70130
                                      Telephone: (504) 680-3008
                                      Facsimile: (504) 680-3184
                                      Mary.Katherine.Kaufman@usdoj.gov