UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **KENNETH NASSET** | * | **CASE NO. 18-9253** |
| vs. | * | **SECT. A(1)** |
| **UNITED STATES OF AMERICA** | * | **JUDGE ZAINEY** |
| | * | **MAG. VAN MEERVELD** |

## REPLY MEMORANDUM IN SUPPORT OF THE USA'S CROSS MOTION FOR SUMMARY JUDGMENT

The United States of America files this reply memorandum in support of its cross motion for summary judgment. The USA is entitled to summary judgment on Plaintiff's medical malpractice claims and on Plaintiff's informed consent claims for several reasons: (1) Plaintiff does not have the requisite expert testimony of a rheumatologist to establish the standard of care for his negligence/medical malpractice claims and this is not a case in which no expert testimony is needed; (2) the Plaintiff was informed of all material risks of taking a TNF inhibitor; (3) and the Plaintiff's expert, a hematologist/oncologist who mostly treats cancer patients, admitted in his deposition that he does not prescribe Enbrel often and his is unfamiliar with the risks of taking Enbrel. Thus, Plaintiff's expert is not qualified to opine on the informed consent claim. Accordingly, the USA is entitled to summary judgment on both claims.

I. **Relevant Procedural Background**

The USA's cross motion for summary judgment seeks summary judgment on the Plaintiff's informed consent claim, which had never been previously briefed by the USA. Plaintiff's argument that this court has ruled twice denying summary judgment on both counts is incorrect and is contrary to a simple look at the record. The USA's first motion for summary judgment, R. Doc. 23, only sought dismissal of Plaintiff's negligence/medical malpractice claims, because as of

1

that date the Plaintiff's informed consent claim was not properly pled in his original complaint. R. Doc. 1. The USA's "Partial Motion for Summary Judgment on Plaintiff's Negligence Claims," R. Doc. 55, only sought summary judgment on the Plaintiff's negligence/medical malpractice claims. Contrary to Plaintiff's allegations, this Court has not yet ruled on the Plaintiff's informed consent claim. The Court's previous orders, R. Docs. 49 and 58, did not address the Plaintiff's informed consent claim. Plaintiff's informed consent claim was not properly pled until June 16, 2020. R. Doc. 50. Thus, at the time the USA filed its motion for summary judgment and partial motion for summary judgment on Plaintiff's negligence/medical malpractice claims, the informed consent claim was not addressed because the USA had not had the opportunity to conduct discovery on that claim. Indeed, the USA's expert reports of Dr. Wilson and Dr. Kusher did not address the informed consent claim because it was not pled at that time. Plaintiff briefed his informed consent claim for the first time in his motion for summary judgment, R. Doc. 57. The USA filed its cross motion for summary judgment in response to the Plaintiff's motion for summary judgment. R. Doc. 62.

**II.   Law and Argument**

The USA is entitled to summary judgment if it can establish lack of proof concerning one essential element of the Plaintiff's case, which necessarily renders all other facts immaterial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). Although the USA need only establish a lack of proof for one element of Plaintiff's claim, the USA, through its cross motion for summary judgment, has pointed out a lack of proof for every element of Plaintiff's alleged negligence/medical malpractice claims and a lack of proof for every element of Plaintiff's alleged lack of informed consent claim.

**A. Plaintiff lacks proof regarding his alleged medical malpractice claims and the USA is entitled to summary judgment.**

Plaintiff failed to prove not one but all three elements of his medical malpractice claims: (1) the applicable standard of care expected of physicians in his medical specialty, (2) a violation of that standard of care, and (3) a causal connection between the alleged negligence treatment and the plaintiff's injuries. Plaintiff cannot satisfy his burden of proof for the first element because he does not have the requisite expert testimony to establish the standard of care of a rheumatologist. La. R.S. 9:2794. This Court has already ruled that Dr. Levin is unqualified to opine on the standard of care. R. Doc. 49. Thus, the USA is entitled to summary judgment on this element alone.

Plaintiff has also failed to establish the second element of his medical malpractice claim, a breach of the standard of care. The Plaintiff is now alleging that this is a case of obvious negligence where no expert testimony is needed because Dr. McGrath violated the VA's internal policy. However, this Court has ruled that "this issue is likely not an example of obvious negligence." R. Doc. 58 at 5. Indeed, Dr. McGrath did not violate the VA policy, and even if he did it is not medical malpractice. A health care facility's internal policies and procedures do not alone determine the governing standard of care." *Pierson v. United States*, 605 F. App'x 293, 295 (5th Cir. 2015). The USA is entitled to summary judgment on this element alone.

Finally, Plaintiff failed to establish that any alleged breach actually caused the Plaintiff's myocardial infarction and congestive heart failure. Plaintiff lacks the requisite expert testimony to establish this element because he did not obtain an expert report from a cardiologist. Although Plaintiff will likely argue that Dr. Levin is qualified to opine on causation, he is not. According to Dr. Levin, who mainly treats cancer patients and practices in the fields of hematology and oncology, there is no need for doctors to specialize in medicine because he can opine on anything and everything. Dr. Levin admitted in his deposition that he would not defer to a cardiologist on

how Enbrel or Humira might affect a patient's cardiovascular system.[1] He believes he is qualified to opine on the causation of Plaintiff's myocardial infarction and congestive heart failure. However, under Louisiana law, he is not. La. R.S. 9:2794. Thus, the USA is entitled to summary judgment on Plaintiff's medical malpractice claims.

It should be noted that Plaintiff is now attempting to get his requisite expert testimony for the standard of care and causation into the record from his treating physicians because Dr. Levin is not qualified to opine on these essential elements of the Plaintiff's medical malpractice claims. Nevertheless, Plaintiff cannot establish the standard of care or causation through his treating physicians, and therefore Plaintiff lacks the requisite expert testimony to establish his medical malpractice claims. Moreover, contrary to Plaintiff's allegation, Dr. Barr did not testify in her deposition that Enbrel caused the Plaintiff's myocardial infarction and congestive heart failure.[2] Dr. Barr, a VA Staff Physician in Hospital Medicine, testified that the cause of Plaintiff's myocardial infarction and congestive heart failure was uncertain, and that she would defer to a cardiologist to determine the cause.

The Plaintiff has had ample time and opportunity to obtain the requisite expert testimony but has failed to do so. Any attempt by Plaintiff to elicit causation testimony through the Plaintiff's treating physicians is improper.[3] This Court has held that testimony as to causation or as to future medical treatment has been considered the province of expert testimony subject to the requirements of FRCP 26 (a)(2)(B), which necessitates an expert report. *See Warren v. Mallory*, 2020 WL 4260448 at *3 (E.D. La. 7/24/20) (I. Lemelle). *See also Rea v. Wisconisn Coach Lines, Inc.*, 2014

---

[1] *See* the deposition of Dr. Levin, attached hereto as Exhibit 1 at 57:17-20.
[2] The USA has not yet received the transcript from Dr. Barr's deposition, which took place on October 13, 2020.
[3] Although the depositions of Dr. Emejuaiwe and Dr. Kollipara have yet to be taken, summary judgment should not be denied for the mere fact that the depositions have yet to occur. Both of these doctors were the Plaintiff's treating rheumatologists.

4

WL 4981803 at *2 (E.D. La. 10/3/2014) (S. Duval)(holding that testimony as to causation of as to future medical treatment has been considered the province of expert testimony subject to the requirements of section (a)(2)(B), which requires an expert report). Thus, because the Plaintiff has not obtained the requisite expert testimony needed to establish his medical malpractice claim and because he cannot obtain such testimony through a treating physician, the USA is entitled to summary judgment.

**B. Plaintiff lacks proof regarding his alleged informed consent claim and the USA is entitled to summary judgment.**

Again, the USA's cross motion for summary judgment is the first time that the USA has argued that it is entitled to summary judgment on the Plaintiff's informed consent claim. The law of the case doctrine does not apply because this Court has yet to issue a ruling on the informed consent claim. This Court's first ruling, R. Doc. 49, was issued on June 4, 2020, prior to the Plaintiff's Amended Complaint filed on June 16, 2020. R. Doc. 50. How can the law of the case doctrine apply to an issue that was not pled at the time of the ruling? Further, it is clear that this Court's second ruling issued on September 11, 2020, R. Doc. 58, was addressing the USA's *Partial* Motion for Summary Judgment, which only sought dismissal of the Plaintiff's medical malpractice claims, and not the Plaintiff's informed consent claim. R. Doc. 55. Any argument by the Plaintiff that the USA has already briefed the Plaintiff's informed consent claim is disingenuous.

The USA is entitled to summary judgment on the Plaintiff's informed consent claim because the USA has established that there is no genuine issue as to any material fact as to not one, but all four elements of this claim: (1) the existence of a ***material risk*** unknown to the patient; (2) a failure to disclose that risk on the part of the physician; (3) that disclosure of the risk would have led a reasonable patient in plaintiff's position to reject the medical procedure or choose a different course of treatment; and (4) a causal connection between the failure to inform patient of the risk

and realization of the risk. Here, the USA has established lack of proof of all elements through the declarations of Dr. Wilson and Dr. Emejuaiwe. R. Docs. 75-14, 75-11 and 75-12. These declarations were properly submitted and should not be excluded, for the reasons more fully discussed in the USA's memorandum in opposition to the Plaintiff's motion to strike, R. Doc. 73, and the USA's sur-reply memorandum in opposition to the Plaintiff's motion to strike, R. Doc. 81.

The declaration of Dr. Wilson establishes that a patient's low risk of developing new congestive heart failure or exacerbation of existing heart failure is not a material risk of taking Enbrel. R. Doc. 75-14. Dr. Wilson further testified that in his experience, patients with psoriatic arthritis take Enbrel despite the low risk of congestive heart failure because that risk is so small and the benefits of taking Enbrel for the patient's psoriatic arthritis are great. *Id.* Plaintiff failed to present any expert testimony from a rheumatologist to dispute this essential element of his informed consent claim. Further, the USA has established that although the risk of congestive heart failure was not a material risk, Dr. Emejuaiwe went above and beyond what was required of a rheumatologist and informed Mr. Nasset on June 5, 2017 the low risk of developing new congestive heart failure or exacerbation of existing heart failure. R. Docs. 75-11 and 75-12. Both declarations establish that Dr. McGrath did not fail to advise Plaintiff of a material risk because the low risk of congestive heart failure is not a material risk, and further, that Dr. Emejuaiwe advised Plaintiff of the low risk or congestive heart failure. Accordingly, the USA is entitled to summary judgment on the Plaintiff's alleged informed consent claim.

Dr. Levin is not qualified to opine on the Plaintiff's informed consent claim. He cannot testify as to whether a risk is a material risk or whether there was a failure to disclose that risk because he is not familiar with Plaintiff's condition, psoriatic arthritis, nor is he familiar with the TNF inhibitors which are used to treat psoriatic arthritis. Dr. Levin admitted in his deposition that

he does not treat psoriatic arthritis, it is outside the scope of his specialties.[4] He admitted he might be involved in the treatment but he is not a rheumatologist.[5] Dr. Levin admitted he has only written "maybe a dozen" prescriptions for Humira and Enbrel, and he does not diagnose and treat it.[6] He also admitted that when he would prescribe the drug Enbrel to a patient and explain its risks he would have to have the label in front of him because it is not a drug that he prescribes often.[7] Thus, Dr. Levin is not familiar with the risks of Enbrel and is unqualified to opine on the materiality of said risks.

Further, although Dr. Levin alleged in his report that he is familiar with the drugs Enbrel and Humira because he is an administrator and practitioner in an infusion suite, in his deposition he couldn't recall off the top of his head the names of the drugs used to treat psoriatic arthritis that are infused.[8] He also admitted that he has only written a prescription for Remicade, an infusion drug to treat psoriatic arthritis, about fifteen times a year.[9] Because Dr. Levin is not familiar with the risks of Enbrel, he is unqualified to testify as to whether the low risk of developing new or worsening congestive heart failure is a material risk that was not disclosed to the Plaintiff. Plaintiff has had ample time to retain a rheumatologist in this case but failed to do so. A hematologist/oncologist who mostly treats cancer patients is not qualified to opine on the materiality of risks in drugs used to treat psoriatic arthritis.

Further, Dr. Levin is not qualified to opine on whether there is a causal connection between the failure to inform the patient of the risk and realization of the risk, a necessary element of Plaintiff's informed consent claim. Because Dr. Levin has only written a prescription for Humira

---

[4] Ex. 1 at 12:5-16.
[5] *Id.*
[6] *Id.* at 25:19-23.
[7] *Id.* at 54:13.
[8] *Id.* at 40:1.
[9] *Id.*

or Enbrel "maybe a dozen" times, he is not qualified to opine on whether a minor side effect of that drug caused the Plaintiff's myocardial infarction and congestive heart failure. That testimony would have to come from a cardiologist. Therefore, Plaintiff has failed to obtain the necessary expert testimony to prove the causation element of his informed consent claim. Accordingly, the USA has established that there is no genuine issue as to any material fact and it is entitled to summary judgment on the Plaintiff's informed consent claim.

## III. Conclusion

Plaintiff's expert evidence is insufficient to meet his burden of proof to establish his alleged medical malpractice claims and his alleged informed consent claim. Further, the summary judgment evidence submitted by the USA establishes that the Plaintiff was informed of the risks as well as the fact that the lack of consent did not cause the Plaintiff's injuries. Summary judgment in favor of the United States is warranted.

Respectfully submitted,

PETER G. STRASSER
UNITED STATES ATTORNEY

*/s/ Mary Katherine Kaufman*
MARY KATHERINE KAUFMAN(#32719)
Assistant United States Attorney
650 Poydras Street, Suite 1600
New Orleans, Louisiana  70130
Telephone:  (504) 680-3008
Facsimile: (504) 680-3184
Mary.Katherine.Kaufman@usdoj.gov
*Counsel for the United States of America*