UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| KENNETH NASSET | * | CIVIL ACTION NO. 18-9253 |
| Plaintiff, | * | |
| | * | JUDGE ZAINEY |
| | * | |
| VERSUS | * | MAG. VAN MEERVELD |
| | * | |
| UNITED STATES OF AMERICA | * | SEC. A(1) |
| | * | |
| Defendant. | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * *

### SUR-REPLY TO USA'S THIRD MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

Plaintiff, Kenneth Nasset ("Nasset"), files this brief Sur-Reply to the Defendant's Out-Of-Time Reply to the Third Motion for Summary Judgment (R. Doc. 84) to address new arguments made by the Defendant.[1] Defendant filed two duplicate Motions for Summary Judgment (R. Doc. 75) and (R. Doc. 62) one which corrects the caption and both noticed for October 14, 2020. Plaintiff has responded once (R. Doc. 72) and files this brief Sur-Reply in response to both motions so that additional argument pertinent to the motion can be submitted.

1. **Plaintiff has established issues of fact for informed consent action.**

Defendant argues that Plaintiff was informed of "all material risks" of taking a TNF inhibitor and mischaracterizes the Plaintiff's expert testimony arguing that Dr. Levin, admitted that he does not prescribe Enbrel "often" and is unfamiliar with risks of taking Enbrel.

---

[1] The Defendant Noticed both motions for October 14, 2020 but filed the Reply after the submission date on October 27, 2020.

During the deposition, Dr. Levin was asked "have you ever written a prescription for Humira or Enbrel" to which he responded "I would say maybe a dozen."[2] Dr. Levin previously explained that in addition to those prescriptions, he administered *orders* at his infusion site of Enbrel and Humira and that he was responsible for actually writing those orders.[3] The Defendant never followed up to ask Dr. Levin how many times he wrote orders for either Humira or Enbrel.

Dr. Levin testified regarding the existence of a material risk. Dr. Levin unequivocally stated that there was a warning for heart disease on the Enbrel box label and that it states "congestive heart failure, worsenting or new onset may occur" and that Enbrel causes heart failure as a known side effect. [4] Dr. Meredith Barr also stated that Enbrel causes myocyte toxicity and that it was unsafe to continue in somebody with heart failure.[5] These doctors' deposition testimony stands in contrast to Dr. Wilson, a Rheumatologist and Dr. Emejuaiwe's statements, neither of which state whether it's a "material risk" but rather state that it's a "low risk." The legal element requires the existence of "material risk" not whether a risk is low or high.

Plaintiff has previously moved to strike Dr. Emejuawie's statement because it was not disclosed in Expert Designations and that motion is still pending before the Court.[6] Nevertheless, Mr. Nasset disputes that Dr. Emejuaiwe advised him of the box label warning of congestive heart failure and offers in support a contemporaneous statement submitted to the VA in support of his VA claim made at or about the time he saw Dr. Emejuaiwe which Defendant

---

[2] Exhibit 1- Deposition of Dr. Levin Pg. 25, ln 19-25
[3] Exhibit 1- Deposition of Dr. Levin Pg. 26
[4] Exhibit 1- Deposition of Dr. Levin Pg. 56-59
[5] Exhibit 2- Deposition of Meredith Barr Pg. 51 24-25 and Pg. 52 ln 1-3
[6] R. Doc. 65

cites in their motion.[7]

Second, with respect to whether the physicians disclosed the risks to the patient, Dr. McGrath testified that heart risks were not part of his discussion.[8] Additionally, Mr. Nasset disputes that Dr. Emejuaiwe gave him any additional information regarding that was already prescribed by Dr. McGrath. Dr. Levin testified that it was an ethical duty and a community standard to get written consent for Enbrel.[9] No written consent exists in this case. Thus, there is a material fact regarding the credibility of Dr. Emejuaiwe and Mr. Nasset's testimony regarding verbal discussions which occurred *after* Dr. McGrath prescribed Enbrel. Further, there is no mention in the medical records, discovery, nor did Defendant even designate Dr. Emejuawie as an expert until now, after the expert deadline has passed. Third, with respect to whether that disclosure of the risk would have led a reasonable patient in plaintiff's position to reject the medical procedure or choose a different course of treatment, Plaintiff submitted a declaration that he would not have chosen this medication if he knew there was even a small chance of having congestive heart failure.

Lastly, with respect to whether a causal connection between the failure to inform a patient of the risk, Dr. Levin clearly indicates in his deposition that Enbrel caused his heart attack because of the side effects and temporal proximity and that a cardiologist is not needed to make the connection.[10] For these reasons, the motion as to informed consent should be denied.

---

[7] R. Doc 61-13
[8] R. Doc. 63-4; McGrath Deposition pg. 20 ln 6-25, pg. 21 ln. 1, VA 443, VA 1416, . R. Doc. 62-13, R.
[9] Exhibit 1- Deposition of Dr. Levin Pg. 27-28
[10] Exhibit 1- Deposition of Dr. Levin pg. 58-60.

**2. Plaintiff has established issues of fact for medical negligence.**

Defendant argues that Dr. Levin stated in his deposition that "there is no need for doctors to specialize in medicine because he can opine on anything and everything."[11] This is an unsupported argument and not true. Dr. Levin stated that he does not need to be a cardiologist to connect known side effects of heart failure with temporal connection of the heart failure experienced by Mr. Nasset.[12]

To the extent that the USA relies on *Pierson v. USA,* that case had zero expert testimony to support Plaintiff's position, which is not the case in this matter.[13] Both Dr. Levin and Dr. Barr connects Enbrel's side effects to congestive heart failure and Dr. Levin connects Mr. Nasset's heart failure to Enbrel.[14]

Defendant is silent about their expert, Dr. Kushner, a cardiologist, whose report and research supports Plaintiff's allegations of negligence. Dr. Kushner provides documentation that a cardiology consult, a baseline echocardiography with ejection fraction, close follow up and **avoidance of 50 mg/week of Enbrel** should occur when prescribing Enbrel. There is no medical record that indicates any of these treatment suggestions were used. [15] Mr. Nasset received no cardiology consultation after prescribing Enbrel, no echocardiography done, no close follow-up and no avoidance of high doses of Enbrel.[16] The medical record instead shows that follow-up was nine months after the initial appointment with Dr. McGrath and for Dr. Emejuaiwe was

---

[11] R. Doc. 82-2, pg. 3
[12] Exhibit 1- Deposition of Dr. Levin pg. 57-60.
[13] *Pierson v. United States*, 605 F. App'x 293, 295 (5th Cir. 2015)
[14] Exhibit 1- Deposition of Dr. Levin pg. 57-60, Exhibit 2-Deposition of Meredith Barr, MD pg. 52-53.
[15] R. Doc. 62-6 and R.Doc. 62-12
[16] R. Doc. 62-6 and R.Doc. 62-12

scheduled for one year later.[17]  There is no mention of an echocardiography, a cardiac consult or any other precautions involving cardiac care.[18]  Although perhaps the most striking point is that there is absolutely no mention of Mr. Nasset being told that patients with a history of heart failure should avoid Enbrel at the 50mg/week dosage which was the dosage he was prescribed. [19]

### 3. Defendant fails to address the tortfeasor's admissions as proof of negligence and/or lack of informed consent.

Defendant consistently fails to address the admissions made by the treating physician whose actions are at issue in this case. Plaintiff sued for negligence and lack of informed consent over the prescribing and administration of Enbrel which ultimately caused him to have a heart attack. [20]  The physician who prescribed him Enbrel, Dr. Hugh McGrath, admitted to certain acts which Plaintiff asserts amounts to negligence such as 1) not reviewing his medical records before prescribing Enbrel 2) not scheduling a follow up appointment 3) not disclosing the risk that Enbrel could cause a heart attack 4) not discussing alternative medications.[21]  Humira was discussed at the appointment and Enbrel was not.[22] Plaintiff received Enbrel through the mail (instead of Humira) and  never saw Dr. McGrath again.[23]

For these reasons, Plaintiff respectfully requests that this Court deny the Defendant's Motion for Summary Judgment.

---

[17] R. Doc. 62-6 and R.Doc. 62-12
[18] R. Doc. 62-6 and R.Doc. 62-12
[19]  R. Doc. 62-13 and R. Doc. 65-4
[20] R. Doc.50-Amended Complaint
[21] R. Doc. 63-4; McGrath Deposition pg. 20 ln 6-25, pg. 21 ln. 1, VA 443, VA 1416, . R. Doc. 62-13, R. Doc. 63-4; McGrath Deposition Page 23 Lines 21-25 Page 24 Line 1
[22] R. Doc. 57-5, R. Doc. 36-2
[23] R. Doc. 57-5, R. Doc. 36-2

Respectfully Submitted,
VASQUEZ LAW

  /s/Jessica Vasquez
Jessica Vasquez (#27124)
400 Poydras Street, Suite 900
New Orleans, Louisiana   70130
Tel: (504) 571-9582
Fax: (504) 684-1449
jvasquez@vasquezlawoffice.com
ATTORNEY FOR KEN NASSET