UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KENNETH NASSET | CIVIL ACTION |
| VERSUS | NO. 18-9253 |
| UNITED STATES OF AMERICA | SECTION "A" (1) |

## ORDER AND REASONS

Before the Court is a **Motion for Summary Judgment (Rec. Doc. 57)** filed by the Plaintiff Kenneth Nasset. The Defendant the United States of America opposes this motion. This motion, set for submission on September 30, 2020, is before the Court on the briefs without oral argument.

**I.  Background**

Nasset filed his Complaint against the Government pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 et seq., regarding the care he received from the U.S. Department of Veterans Affairs ("VA") in New Orleans, Louisiana, for the treatment of his psoriatic arthritis in 2016. (Rec. Doc. 49, p. 1, Court's Order). Nasset claims that on September 13, 2016 he saw Dr. Hugh McGrath, a rheumatologist, and was prescribed a TNF inhibitor after discussing two drugs, Humira and Enbrel, for treating his psoriatic arthritis. (Rec. Doc. 1, p. 3, Nasset's Complaint). After taking Enbrel for almost a year, Nasset was hospitalized on June 13, 2017 and was informed that he had congestive heart failure and a myocardial infarction. *Id*. at 4. During this hospitalization, Nasset claims that his attending physicians, Dr. Margret Maxi and Dr. Meredith Barr, advised him that the Enbrel medication was the cause of his myocardial infarction. *Id*.

On June 4, 2020, the Court allowed Nasset to amend his Complaint to make the following three claims against the Government: (1) negligence, (2) vicarious liability, and (3) lack of informed consent. Nasset then filed this Motion for Summary Judgment as to his negligence, vicarious liability, and informed consent claims.

## II. Summary Judgment Legal Standard

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought." "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be . . . disputed must support the assertion by . . . citing to particular parts of materials in the record[.]). A fact is immaterial "if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

## III. Discussion

To prevail in a medical malpractice case, a plaintiff must prove all three of the following elements by a preponderance of the evidence: (1) the applicable standard of care expected of physicians in his medical specialty, (2) a violation of that standard of care, and (3) a causal connection between the alleged negligent treatment and the plaintiff's injuries. La. R.S.

9:2794; *Pfiffner v. Correa*, 643 So.2d 1228, 1233 (La. 1994). While expert testimony is generally required to establish malpractice, "[t]he jurisprudence has also recognized that there are situations in which expert testimony is not necessary." *Pfiffner*, 643 So.2d at 1233. For instance, expert testimony is not required where the physician does an obviously careless act, from which a lay person can infer negligence. *Id*. (citing *Hastings v. Baton Rouge Gen. Hosp.*, 498 So.2d 713, 719 (La. 1986)). "Failure to attend a patient when the circumstances demonstrate the serious consequences of this failure, . . . [is] also [an] example[ ] of obvious negligence which require[s] no expert testimony to demonstrate the physician's fault." *Id*. at 1234. "Likewise, where the defendant/physician testifies as to the standard of care and his breach thereof, *see, e.g., Riser v. American Medical Int'l Inc.*, 620 So.2d 372, 377 (La. Ct. App. 5th Cir. 1993); *Hastings*, 498 So.2d at 722 (violation of LSA-R.S. 40:2113.4 which imposes duty on a hospital to make emergency services available to all persons in the community without regard to income or insurance protection and hospital bylaws establishing duties for on-call physicians), . . . expert testimony is also unnecessary to establish a malpractice claim." *Pfiffner*, 643 So.2d at 1234.

To establish an informed consent claim, a plaintiff must prove (1) the existence of a material risk unknown to the patient, (2) a failure to disclose that risk on the part of the physician, (3) that disclosure of the risk would have led a reasonable patient in the plaintiff's position to reject the medical procedure or choose a different course of treatment, and (4) injury. *Hamilton v. Negi*, No. CIV.A. 09-0860, 2014 WL 1388260, at *4 (W.D. La. Mar. 31, 2014), *aff'd*, 595 F. App'x 346 (5th Cir. 2014) (citing *Maybrier v. La. Med. Mut. Ins. Co.*, 12 So.3d 1115, 1119 (La. App. 3d Cir. 2009)) (citations omitted). In Louisiana, a physician is not charged with the duty of informing a patient of any and all known risks, but rather, a physician

has the duty to disclose all material risks of the proposed treatment. *Deroch v. Tanenbaum*, 131 So.3d 400 (La. App. 4 Cir. 12/18/13). The Louisiana Supreme Court explained,

> The determination of materiality is a two-step process. The first step is to define the existence and nature of the risk and the likelihood of its occurrence. "Some" expert testimony is necessary to establish this aspect of materiality because only a physician or other qualified expert is capable of judging what risk exists and the likelihood of occurrence. The second prong of the materiality test is for the trier of fact to decide whether the probability of that type harm is a risk which a reasonable patient would consider in deciding on treatment. The focus is on whether a reasonable person in the patient's position probably would attach significance to the specific risk. This determination of materiality does not require expert testimony.

*Hondroulis v. Schuhmacher*, 553 So.2d 398, 412 (La. 1988).

In his Motion for Summary Judgment, Nasset argues that no genuine issue of material fact exists for his negligence, vicarious liability, and informed consent claims, because Dr. McGrath's testimony supports Nasset's contentions. Specifically, Nasset argues that an expert opinion is not required for his negligence and vicarious liability claims because (1) Dr. McGrath admitted to the negligence and (2) the obvious negligence exception applies. As Nasset notes, the VA Medication Management Policy states that, "an assessment of each patient's response to his/her medications is to be performed by the clinician to ensure clinical needs are met and to address the patient's response to the prescribed medications and actual or potential medication related problems." (Rec. Doc. 57-1, p. 2). Nasset argues that Dr. McGrath should have ordered a follow-up appointment to perform an assessment as to Nasset's response to Enbrel according to the VA policy; thus, by not ordering a follow-up, Dr. McGrath was in violation of this policy. *Id.* at 2-4. Additionally, he argues that there was no informed consent, because the side effects of Enbrel were never discussed.

Conversely, the Government contends Nasset cannot satisfy his burden of proof because both his negligence claim and his vicarious liability claim require expert testimony,

which he failed to obtain. More specifically, the Government points out that Nasset only has one medical expert, Dr. Mark Levin, who the Court determined to be unqualified to give an opinion on the standard of care for a rheumatologist. (Rec. Doc. 61, p. 2-3, Government's Memorandum in Opposition).[1] The Government also contends that the VA's internal policy cannot establish the applicable standard of care and that Dr. McGrath did not admit to breaching the standard of care. *Id.* at 2. Further, the Government argues that Nasset cannot satisfy his burden of proof regarding informed consent, because congestive heart failure is a material risk of taking Enbrel, that Nasset was advised of all material risks of taking Enbrel by three separate rheumatologists, and that Nasset's own testimony raises a genuine issue of material fact as to the causation of his congestive heart failure. *Id.* at 4, 9.

Here, the Court finds that genuine issues of material facts exist regarding Nasset's negligence, vicarious liability, and informed consent claims. More specifically, there still remains a question of fact as to whether Dr. McGrath violated the VA Medication Management Policy by not having a follow-up assessment with Nasset. As noted above, expert testimony is not needed when "the defendant/physician testifies as to the standard of care and his breach thereof." *Pfiffner*, 643 So.2d at 1234; *Hastings*, 498 So.2d at 722. Nasset has not established that Dr. McGrath admitted to violating the VA policy nor that this is an example of obvious negligence. Additionally, because an issue of fact remains as to whether Nasset was advised of the material risks of taking Enbrel, Nasset has not met his burden of proof regarding his informed consent claim. As a result, the Court denies Nasset's Motion for Summary Judgment.

---

[1] However, the Court qualified Dr. Mark Levin as an expert to testify as to whether Nasset had informed consent to use Enbrel. (Rec. Doc. 49, p. 5, Court's Order).

Accordingly;

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 57)** filed by the Plaintiff Kenneth Nasset is **DENIED**.

December 8, 2020

_____
JUDGE JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE